# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 19, 2012            Decided June 15, 2012

No. 11-5209

JOHN DOE,
APPELLEE

v.

DONALD H. RUMSFELD,
APPELLANT

MICHAEL CHERTOFF, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01902)

*Henry C. Whitaker*, Attorney, argued the cause for appellant. With him on the briefs were *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Robert M. Loeb*, Attorney.

*Michael I. Kanovitz* argued the cause for appellee John Doe. With him on the brief were *Gayle Horn* and *Jesselyn Radack*.

*Debra S. Katz* was on the brief for *amicus curiae* Project on Government Oversight in support of appellee John Doe.

Before: SENTELLE, *Chief Judge*, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Appellee, a government contractor identified herein as John Doe, underwent military detention in Iraq. After his release, he filed this action in the district court against, *inter alia*, then-Secretary of Defense Donald Rumsfeld alleging claims under the Detainee Treatment Act (DTA), 42 U.S.C. § 2000dd *et seq.*, and a *Bivens* action for violation of his due process rights. Secretary Rumsfeld moved to dismiss for failure to state a claim upon which relief could be granted. The district court granted the motion as to the claims under the DTA and some other claims, but did imply an action under the *Bivens* due process theory and denied Rumsfeld's motion to dismiss as to those claims. Secretary Rumsfeld appeals from the denial of his motion, arguing both that the claims are barred by qualified immunity and that the court erred in implying such a cause of action in the first instance. Because we agree that the district court erred in implying such a cause of action, we reverse the order of the district court.

## Background

Because this case arises out of a motion to dismiss, we, like the district court, accept the well-pleaded factual allegations set forth in Doe's complaint as true for purposes of this stage of the litigation and construe reasonable inferences from those allegations in Doe's favor, although we are not required to accept Doe's legal conclusions as true. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Doe's complaint alleges the following facts:

In December 2004, Doe, a United States citizen and employee of an American-owned defense contracting firm, traveled to Iraq to work as a civilian Arabic translator and was detailed to a United States Marine Corps Human Exploitation Team operating along the Iraqi-Syrian border. Doe's job was to develop intelligence through contacts with local Iraqis and to discover threats to the Marine unit. In July 2005, he made contact and developed a relationship with Iraqi Sheikh Abd Al-Sattar Abu Risha. Doe maintains that he became the unit's point of contact with Al-Sattar and that, through a series of secretive meetings, he cultivated Al-Sattar as a United States "ally."

On October 20, 2005, Doe returned to a United States military camp in preparation to depart for his annual leave. There, a Navy Criminal Investigative Service (NCIS) agent asked to interview Doe. Doe agreed and discussed his work with the agent.

Two weeks later, Doe traveled to Al Asad, a United States military base, from which he was scheduled to depart for his leave. At that point, three NCIS agents, including the one who previously interviewed him, along with another United States official, detained Doe and interrogated him for four hours. Doe alleges that the agents denied his requests to have an attorney, a company representative, or a member of the Marine unit present for his questioning. Doe states that the agents confiscated his luggage, blindfolded him, kicked him in the back, and threatened to shoot him if he tried to escape.

Doe was transferred into the custody of the Marine Corps. After seventy-two hours of solitary confinement, he was blindfolded, hooded, and flown to Camp Cropper, a United States military facility near Baghdad International Airport used to hold high-value detainees, where he was confined for nine months. For the first three months, Doe alleges he was kept in

solitary confinement; thereafter, he was transferred into a cell housing suspected hostile al Qaeda and Arab Socialist Ba'ath Party members. Doe alleges that the military officers publicized his affiliation with the Department of Defense to encourage his cell mates to attack him and that the prison guards mistreated him by exposing him to extreme temperatures and depriving him of sleep. He alleges that one guard choked him repeatedly. During his detainment, United States government officials interrogated Doe multiple times and denied his requests for an attorney to be present at those interrogations.

In December 2005, the Detainee Status Board held a hearing and deemed Doe a threat to the Multi-National Forces in Iraq. In July 2006, the Board held a second hearing, after which Doe was transported to Jordan and ultimately to the United States, where he was released. Doe was never formally charged with a crime. He alleges that his property was not returned to him and that he has been placed on watch lists, preventing contracting firms from hiring him and causing customs officials to interrogate him when he returns from international travel.

**Procedural History**

In November 2008, Doe filed this action against former Secretary of Defense Donald Rumsfeld, other United States government officers and agents, and the United States government. Relevant to this appeal, Doe asked the district court to hold Secretary Rumsfeld personally liable for violating Doe's rights under the DTA and for violating Doe's constitutional rights guaranteed under the Fifth, Eighth, and Fourteenth Amendments on the theory that Secretary Rumsfeld developed, authorized, and implemented the policies that caused Doe harm.

Secretary Rumsfeld moved to dismiss Doe's claims against him for failure to state a claim upon which relief could be granted. *Doe v. Rumsfeld*, 800 F. Supp. 2d 94, 100 (D.D.C. 2011). The district court dismissed Doe's claims arising under the DTA, holding that the DTA does not provide a private cause of action. *Id*. at 104-05. The district court also dismissed Doe's procedural due process and access to court claims, holding that Doe had not pled sufficient facts to overcome Secretary Rumsfeld's qualified immunity defense. *Id*. at 113-14.

The court held, however, that Doe could maintain a federal cause of action for his substantive due process claims under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court also held that Secretary Rumsfeld was not entitled to a qualified immunity defense to Doe's substantive due process claims because Doe had a right to be free from detention and interrogation practices that "shock the conscience"; that right was established at the time of Rumsfeld's alleged conduct; and Doe sufficiently pled facts to support a claim that Secretary Rumsfeld violated that right. *Doe*, 800 F. Supp. 2d at 115.

Secretary Rumsfeld filed this interlocutory appeal of the district court's partial denial of his motion to dismiss Doe's claims against him. He argues that the district court erred first by implying a *Bivens* action arising out of the sensitive context of a military detention in a foreign warzone and second by denying him qualified immunity against Doe's substantive due process claims. Our review of each of these legal issues is *de novo*. *See Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008).

**Jurisdiction**

Although the jurisdiction of courts of appeals ordinarily extends only to review of "final decisions" of the district courts,

we have jurisdiction over the current interlocutory appeal. This case fits squarely within a well-established exception that the denial of a motion to dismiss on the ground of qualified immunity has sufficient finality to warrant interlocutory review, and within the language of *Hartman v. Moore*, 547 U.S. 250 (2006), that where "the definition of an element of the [asserted cause of action] [was] directly implicated by the defense of qualified immunity and properly before us on interlocutory appeal," we have jurisdiction over the appeal. *Id.* at 257 n.5.

## Analysis

Doe's due process claims against the Secretary of Defense depend upon the court extending the bounds of claims for relief first recognized by the Supreme Court in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that plaintiffs may have a cause of action against federal officials who, while acting under the color of law, violate the plaintiffs' Fourth Amendment right to be secure against unreasonable searches and seizures, even if no statute authorizes such relief. The Court cautioned in dicta in *Bivens*, and in later cases repeatedly held, that if "special factors counsel[] hesitation in the absence of affirmative action by Congress" or if Congress affirmatively has declared that injured persons must seek another remedy, courts should not imply a cause of action where none exists. *See Bivens*, 403 U.S. at 396-97; *Chappell v. Wallace*, 462 U.S. 296, 298 (1983); *United States v. Stanley*, 483 U.S. 669, 678 (1987); *Minneci v. Pollard*, 132 S. Ct. 617, 621 (2012). The district court in this case held that no special factors counsel hesitation and no other remedy exists for the alleged violations of Doe's substantive due process rights. Therefore, the court held, Doe could maintain a federal cause of action under *Bivens*. *Doe*, 800 F. Supp. 2d at 111.

We do not agree. The implication of a *Bivens* action, consistent with the dicta in *Bivens* itself and the later holdings of the Supreme Court and this court, is not something to be undertaken lightly. In the forty-two years since the Supreme Court decided *Bivens*, only twice has it extended *Bivens* remedies into new classes of cases—once in the context of a congressional employee's employment discrimination due process claim, *Davis v. Passman*, 442 U.S. 228 (1979), and once in the context of a prisoner's claim against prison officials for an Eighth Amendment violation, *Carlson v. Green*, 446 U.S. 14 (1980). *See Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009). In 1988, the Supreme Court acknowledged that "[o]ur more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988). More recently, the Court explained that "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability to any new context or new category of defendants." *Iqbal*, 556 U.S. at 675 (quotation marks and citation omitted). The Supreme Court consistently has considered and rejected *Bivens* remedies in all other contexts. *See Minneci*, 132 S. Ct. at 622-23 (collecting five categories of cases in which the Court has declined to imply *Bivens* remedies). Unlike the district court, we perceive that special factors present in this case counsel against the implication of a new *Bivens* remedy.

## 1. Special Factors Pertaining to Military, Intelligence, and National Security

The Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence. In the military context, the Court has explained that "the insistence (evident from the number of Clauses devoted to the subject) with which the Constitution confers authority over the Army, Navy, and militia upon political branches . . . . counsels

hesitation in our creation of damages remedies in this field." *Stanley*, 483 U.S. at 682. In *Stanley*, the Court held that "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'" *Id.* at 684 (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)). The *Stanley* decision echoed the Supreme Court's earlier refusal to recognize a cause of action against military superiors in *Chappell v. Wallace*, 462 U.S. 296 (1983). There, five enlisted men sought damages and other relief against their superior officers for alleged discrimination. In refusing to recognize a *Bivens* cause of action, the Court stated that "'[i]t would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process.'" *Chappell,* 462 U.S. at 302 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). Granted, Doe is a contractor and not an actual member of the military, but we see no way in which this affects the special factors analysis.

The strength of the special factors of military and national security is underlined by precedent beyond the *Bivens* cases, and indeed before the creation of *Bivens* remedies. The Court long has recognized that even during the "twilight between war and peace," trials that would deplete military resources "would hamper the war effort and bring aid and comfort to the enemy." *Johnson v. Eisentrager*, 339 U.S. 763, 779 (1950). In the context of national security and intelligence, the Court has cautioned that "[m]atters intimately related to . . . national security are rarely proper subjects for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292 (1981). Military detainee cases implicate similar concerns regarding the conduct of war, the separation of powers, and the public scrutiny of sensitive information.

In addition to the Supreme Court precedent, this circuit and others have not implied *Bivens* actions in cases involving these special factors. For instance, in *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011), we considered whether Afghan and Iraqi detainees who were captured and held in their home countries by the United States military could bring *Bivens* claims against United States military officials. In addition to our concerns that such a trial would deplete military resources, we recognized that "allowing a *Bivens* action to be brought against American military officials engaged in war would disrupt and hinder the ability of our armed forces to act decisively and without hesitation in defense of our liberty and national interests." *Ali*, 649 F.3d at 773 (quotation marks and citation omitted); *see also Rasul v. Myers*, 563 F.3d 527, 532 n.5 (D.C. Cir. 2009).

In *Wilson*, we considered whether to imply a *Bivens* remedy to allow a Central Intelligence Agency operative and her husband to recover damages for injuries they allegedly suffered when her covert status was made public. *Wilson*, 535 F.3d at 701, 704. In declining to imply such a cause of action, we held that the "require[d] judicial intrusion" into national security and intelligence matters was itself a special factor counseling hesitation because such intrusion would subject sensitive operations and operatives to judicial and public scrutiny. *Id*. at 710.

In *Arar*, the Second Circuit determined that a dual citizen of Canada and Syria could not bring a *Bivens* claim against United States government and military officials based on allegations of torture he suffered in the United States because "such an action would have the natural tendency to affect diplomacy, foreign policy, and the security of the nation, and that fact counsels hesitation." 585 F.3d at 574.

And in *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012), the Fourth Circuit held that a United States citizen who was arrested and detained as an enemy combatant in the United States upon his return from Afghanistan could not bring a *Bivens* action against top Department of Defense officials for their policy judgments regarding the designation and treatment of enemy combatants. *Id*. at 544-45, 547, 556-57. The *Lebron* court offered an extensive review of the numerous factors counseling hesitation, including the importance of "[p]reserving the constitutionally prescribed balance of powers," *id*. at 548-50; the sensitive nature of the allegations involved in detainee cases, *id*. at 550-51; the need to review the military command structure in order to determine liability, *id*. at 553; and administrability concerns regarding the need to require current and former officials to testify about the rationale for the policy at issue, *id*. at 553-54.

Many of the same special factors counseling hesitation identified in the cases discussed above are present in this case. In his complaint, Doe challenges the development and implementation of numerous military policies and decisions. The complaint would require a court to delve into the military's policies regarding the designation of detainees as "security internees" or "enemy combatants," as well as policies governing interrogation techniques.

Doe's allegations against Secretary Rumsfeld implicate the military chain of command and the discretion Secretary Rumsfeld and other top officials gave to NCIS agents to detain and question potential enemy combatants. The allegations raise questions regarding Secretary Rumsfeld's personal control over the treatment and release of specific detainees. Litigation of Doe's case would require testimony from top military officials as well as forces on the ground, which would detract focus, resources, and personnel from the mission in Iraq. And as we

recognized in *Ali*, allowing such an action would hinder our troops from acting decisively in our nation's interest for fear of judicial review of every detention and interrogation. *See* 649 F.3d at 773.

Doe seeks to distinguish his case from our precedent by emphasizing that he, unlike the detainees in *Rasul* and *Ali*, is a United States citizen. Appellee's Br. at 19. Those decisions, however, did not hinge on the plaintiffs' citizenship status. Although Doe's United States citizenship does remove concerns we had in those cases about the effects that allowing a *Bivens* action would have on foreign affairs, *see, e.g.*, *Ali*, 649 F.3d at 773-74, his citizenship does not alleviate the other special factors counseling hesitation present in those cases and discussed above.

## 2. Congressional Action

The Supreme Court has held that one special factor precluding the creation of a *Bivens* remedy is the existence of a statute that provides at least a partial remedy to the same harm alleged by a plaintiff seeking a *Bivens* remedy. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 380, 388 (1983) (presence of federal civil service laws precluded additional *Bivens* remedies, even though they did not provide "complete relief"). The Supreme Court also has stated that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Schweiker*, 487 U.S. at 421-22. The Court explained that "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Id*. at 423 (denying *Bivens* remedy for emotional distress suffered because of delay in receipt of Social

Security benefits, in part because Congress had created elaborate Social Security scheme, but not that particular remedy). Similarly, this Court has acknowledged that in situations in which "Congress has intentionally withheld a remedy . . . we must most refrain from providing one because it is in those situations that appropriate judicial deference is especially due to the considered judgment of Congress that certain remedies are not warranted." *Wilson*, 535 F.3d at 709 (internal quotation marks omitted).

That is not to say that there is a statute as directly implicated in this case as there was in *Lucas* or *Wilson*. But congressional inaction also can inform our understanding of Congress's intent. For instance, under the Torture Victim Protection Act, 28 U.S.C. § 1350, United States residents may sue foreign states. When asked to expand the list of possible defendants under that statute, we assumed that Congress deliberately "did not . . . include as possible defendants either American government officers or private U.S. persons." *Saleh v. Titan Corp.*, 580 F.3d 1, 16 (2009). Here, there is similar evidence of congressional inaction, which supports our conclusion that this is not a proper case for the implication of a *Bivens* remedy. In 2005, Congress enacted the Detainee Treatment Act, which governs interrogation practices and prohibits Department of Defense officials from using any techniques not authorized by the United States Army Field Manual on Intelligence Interrogation. 42 U.S.C. § 2000dd(a); 10 U.S.C. § 801 note. As the district court recognized, the DTA created no private cause of action. Neither in that Act nor any other has Congress extended a cause of action for detainees to sue federal military and government officials in federal court for their treatment while in detention. It would be inappropriate for this Court to presume to supplant Congress's judgment in a field so decidedly entrusted to its purview.

## Qualified Immunity

Secretary Rumsfeld also argues that the district court erred by denying him qualified immunity against Doe's substantive due process claims. Qualified immunity protects public officials personally sued for damages "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because we have determined that Doe may not bring a *Bivens* action against Secretary Rumsfeld, we need not consider Secretary Rumsfeld's qualified immunity defense to such an action.

## Conclusion

Because Doe has failed to state a constitutional *Bivens* claim for which relief may be granted, we reverse the district court's order.